UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRENDA A. RAWSON,            )
                             )
    Plaintiff                )
                             )
v.                           )   Civil No. 09-469-B-W
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                             )
    Defendant                )

# REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge's conclusions are not supported by medical opinion and that he impermissibly interpreted raw medical evidence. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from anxiety, depression, post-traumatic stress disorder, obesity, and right knee osteoarthritis, impairments that were severe but which did not, considered separately or together, meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 16, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Subpart P (the "Listings"), Findings 3-4, Record at 9-10; that she retained the residual functional capacity to perform work at the medium exertional level, except that she could not perform constant pushing and/or pulling with her left lower extremity, could only occasionally crouch, kneel, or crawl, was limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced environment, and involving only simple work-related decisions with, in general, relatively few work changes, occasional interaction with supervisors and co-workers but no interaction with the general public, Finding 5, *id*. at 12; that she was capable of returning to her past relevant work as a deli clerk, dishwasher, paper inserter, production worker in a bakery, and service worker, Finding 6, *id.* at 19; and that she, therefore, had not been under a disability, as that term is defined in the Social Security Act, at any time from July 1, 2004 (the alleged disability onset date), through the date of the decision, Finding 8, *id*. The Decision Review Board did not complete its review of the administrative law judge's decision during the time allowed, *id*. at 1-3, making it the final determination of the commissioner. 20 C.F.R. § 405.420(a).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the

commissioner must make findings of the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

## Discussion

### A. Mental Impairments

The plaintiff first complains that "[t]he Decision did not base the RFC limitations regarding Mental Impairments on any medical opinion in the record." Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (Docket No. 6) at 2. She apparently contends that, because the mental residual functional capacity found by the administrative law judge does not conform in full to any existing single assessment by a medical professional, the administrative law judge could only have himself interpreted raw medical evidence, which he may not do. *Id.* at 2-4.

Such an argument is based on a false premise. An administrative law judge need not adopt all of any particular provider's, consultant's, or evaluator's findings if the administrative law judge states the reasons for adopting only a portion of them. *See Howard v. Astrue*, No. 06-96-B-W, 2007 WL 951389 (D. Me. Mar. 27, 2007), at *5 ("In this circuit, picking and choosing among experts' opinions does not in itself constitute error.")

If, on the other hand, the plaintiff merely meant to argue that there is no medical support in the record for a particular provision of the mental RFC found by the administrative law judge, she fails to identify that provision. Nor are the findings of a state-agency reviewer necessarily deprived of substance to support the administrative law judge's conclusions merely because the

3

plaintiff submitted additional medical records after the reviewer submitted his or her conclusions, as the plaintiff suggests. Itemized Statement at 2. It is entirely possible that any such records would be consistent with the state-agency reviewer's findings or, if they differed in some particular respect, that the later records provided data that did not require professional analysis, or that some other medical professional analyzed them in a manner that supported the administrative law judge's conclusion.

In this case, the administrative law judge devoted seven pages of single-spaced text to a discussion of the reasons for his findings with respect to the plaintiff's RFC. With respect to the plaintiff's mental RFC, the administrative law judge thoroughly reviewed the reports and records of the Crisis & Counseling Center dated November 16, 2007 (Exhibit 1F): Donna McKenney, CSP, from January 2008 (Exhibit 4F); Dr. Edward Quinn, a psychologist-consultant who examined the plaintiff on December 28, 2007 (Exhibit 7F); Dr. Lewis Lester, a state-agency reviewing psychologist (Exhibits 8F, 9F); Dr. Gary Rasmussen, a consulting psychologist who examined the plaintiff on June 12, 2008 (Exhibit 11F); Dr. Thomas Knox, a state-agency reviewing psychologist (Exhibits 12F, 13F); and Janet Zalanskas, APRN, who saw the plaintiff on March 30, 2009 (Exhibit 18F). Record at 14-16.

The administrative law judge then said:

> The undersigned finds that the opinions of Drs. Rasmussen and Knox should be accorded some weight. However, the undersigned disagrees with these opinions to the extent they find the claimant's alcohol abuse material to the outcome of the issue of disability. The claimant testified that, despite her over 15 years of abusing alcohol, she was able to maintain a job and left her most recent work not because of an inability to function but because her hours were cut back. . . . The claimant did not appear to have any difficulty socializing or cooperating with healthcare providers or consultative examiners.
> In March 2009, the claimant told her primary care physician that she was in counseling. She complained about situational stressors like arguments with her boyfriend and finances. The claimant denied homicidal or

4

> suicidal ideation. [S]he had not experienced any loss of interest in activities or loss of pleasure in doing things. She had no feeling of hopelessness or depression. . . . Exhibit 16F.

*Id*. at 16.

After presenting his reasons for rejecting the diagnosis made after a single visit by Ms. Zalanskas, who was not an acceptable medical source for diagnosis, the administrative law judge added:

> In May, 2009, the claimant endorsed some symptoms of depression. She said that counseling was "so-so" and had been started on medications. She complained that she felt like she was being asked the same questions repeatedly and she didn't like talking about herself. Exhibit 20F. It is noteworthy that the claimant had not begun any psychiatric medications until April 20, 2009.[2] Exhibit 14E.

*Id*.

And, later in the opinion:

> With respect to her mental impairments, the claimant has been diagnosed with a post-traumatic stress disorder and a substance abuse disorder for which she has only recently received treatment. The severity of her symptoms as evidenced by the medical evidence has been assessed in arriving at the above residual functional capacity assessment. The claimant testified at the hearing that she left her most recent job because of a lack of work, not because of any impairment. She is able to function independently outside her home and attend appointments. She is able to concentrate sufficiently to watch television, play cards and dice games. The claimant socializes with others. She reported that she has no difficulties getting along with people. Exhibit 10E.
>
> The undersigned has reviewed the available medical records, listened to the testimony of the claimant at her hearing as well as that of the vocational expert and medical expert, and weighed the opinions of multiple medical sources. The undersigned concludes that, based on the record in its entirety, the claimant is capable of performing work within the above residual functional capacity assessment.

*Id*. at 18-19.

---

[2] The hearing on the plaintiff's applications was held on May 14, 2009. Record at 26. She was notified of this date by a letter dated February 23, 2009. *Id*. at 99.

5

It is clear that the administrative law judge considered all of the medical evidence in the record, including any that might not have been available to Dr. Lester, who evaluated the plaintiff's mental impairments as of January 30, 2008. *Id.* at 288. But, this does not mean, as the plaintiff would have it, Itemized Statement at 4, that the administrative law judge must have relied on his own, impermissible interpretation of "raw medical evidence." Rather, as is clear from the opinion, the administrative law judge considered the conclusions of medical experts, which is exactly what he is supposed to do.

At oral argument, counsel for the plaintiff contended that Dr. Lester's evaluation could not provide substantial evidence to support the administrative law judge's conclusions for at least two reasons: first, because he did not explicitly say that he relied on that evaluation and, second, because the state agency itself "rejected" Dr. Lester's evaluation via the subsequent state-agency evaluation, presumably that of Thomas Knox, Ph.D., Record at 312-39, on reconsideration.

This court has never required an administrative law judge to specify the evidence in the record upon which his or her opinion is based in order to find that opinion supported by substantial evidence in the record. *See, e.g., Freeman v. Barnhart*, No. 02-78-P-H, 2002 WL 31599017 (D. Me. Nov. 20, 2002), at *6 (finding substantial evidence in record without mentioning whether administrative law judge cited that evidence). Counsel for the plaintiff did not cite any authority for his argument to the contrary, and I am aware of none.

Dr. Knox's evaluation was completed later than that of Dr. Lester. *Compare* Record at 312 (dated June 16, 2008) *with id.* at 288 (dated January 30, 2008). The only records that the plaintiff identifies as having been submitted during the four and one-half months between the two reports are Exhibits 11F and 18F. Itemized Statement at 2. The two examinations reported in Exhibit 18F occurred in 2009, Record at 392-93, and could not have been available to Dr.

6

Knox. Exhibit 11F, dated June 13, 2008, *id*. at 307, was reviewed by Dr. Knox, *id*. at 338, and his summary of that one-time consultative examination does not suggest any specific finding that is inconsistent with Dr. Lester's conclusions, nor did counsel for the plaintiff identify any such inconsistencies. Dr. Knox's evaluation does not refer to Dr. Lester's earlier conclusions, so it cannot be said to "reject" them. I am not aware of any statute, regulation, or case law that makes the findings of a state-agency reviewer automatically those of the state agency, so that any later psychiatric review, for example, automatically "trumps" an earlier one, thereby making the earlier conclusions unavailable as support for an administrative law judge's conclusions.

In this case, the administrative law judge explained his reasons for rejecting some of Dr. Knox's conclusions. *Id*. at 16. Nothing more was required.[3]

The plaintiff takes nothing by this argument.

### B. Physical Impairments

The plaintiff's second and final challenge is to the physical RFC assigned to her by the administrative law judge. Specifically, she cites the following statement in the opinion as definitive evidence that the administrative law judge must have "impermissibly interpreted medical data," *id*.[4]:

> This new evidence, combined with the testimony of the claimant at the hearing, justifies a conclusion that the claimant's impairments are more limiting than was concluded by Drs. Johnson and Trumbull.

Record at 17. The "new evidence" that is discussed by the administrative law judge in his opinion, immediately before the quoted passage, is "[a]dditional medical evidence . . . received in the course of developing the claimant's case for review at the hearing, including new medical

---

[3] I reject counsel's argument that saying that an administrative law judge interpreted raw medical evidence and saying that there is insufficient evidence to support his or her conclusions "are both the same thing[,]" whether in the context of this specific case or in general.

[4] The plaintiff's quotation of this sentence omits the initial word, "this." Itemized Statement at 4.

records from a treating source." *Id*. This can only be evidence made available after January 15, 2008, the date Dr. Trumbull's assessment, the later of the two assessments by him and Dr. Johnson. *Id*.

In subsequent paragraphs, the administrative law judge then discussed this "additional medical evidence" to which he referred. *Id*. It included Dr. Bruce Trembly's report of his consultative examination on June 17, 2008; the critique of Dr. Trembly's report by Dr. Iver Nielson, a state-agency consultant, dated July 3, 2008, *id*. at 350; the record of a visit at Maine Dartmouth Family Practice on January 21, 2009; notes of a visit with the plaintiff's primary care provider in February 2009; records of a right knee arthroscopy in March 2009 and follow-up appointments at which the plaintiff reported that she was not following the prescribed home exercise program, had some knee soreness, but was not taking prescription medication for any knee pain; and the administrative law judge noted that there was no evidence that the claimant required an assistive device in order to walk. *Id*. at 17-18.

None of this review of the more recent medical evidence constitutes interpretation by the administrative law judge of raw medical evidence; in large part, the administrative law judge expressly relied on conclusions stated by medical experts. It is the plaintiff's burden, after all, to submit evidence to support her apparent contention that, as a result of her knee surgery, she was in fact not able to perform work at the medium-exertional level with the limitations of no constant pushing and/or pulling with her left lower extremity and only occasional crouching, kneeling, or crawling. *Id*. at 12.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of July, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge